**CIRCUIT COURT OF BOTETOURT COUNT**

Peter Samuel Plunkett et al.

v.

Linda B. Plunkett

October 13, 2004

Case No. CH02000112-00

BY JUDGE MICHAEL S. IRVINE

This matter came to be heard on the 13th day of August, 2004, upon the Bill of Complaint filed by the children of Carroll H. "Pete" Plunkett, deceased, asking this Court to impose a constructive trust on all "separate property of the decedent" in the possession, custody, or control of his widow, the defendant, and to order that such property be conveyed to the Plaintiffs outright, free of trust.

The issue presented to the Court is whether Pete Plunkett's will, which leaves all of his marital and separate property to his wife Linda Plunkett, fails to conform to a post-nuptial agreement executed by Pete and Linda Plunkett by failing to devise Pete's separate property to Pete's children upon his death.

For the reasons hereinafter stated, the Court finds that the Plaintiffs have proven by clear and convincing evidence that the agreement provided for Plaintiffs to receive Pete Plunkett's separate property under his will, and they are entitled to the relief sought.

The Plaintiffs argue for enforcement of the post-nuptial agreement between Pete Plunkett and his wife Linda Plunkett. Plaintiffs argue that the agreement provides that, upon the death of Pete Plunkett, his marital property should be devised to Linda Plunkett and that his separate property should be devised to his three children. Plaintiffs ask that a constructive trust be imposed

upon the separate property of Pete Plunkett to result in the transfer of the property to Pete's three children.

Pete Plunkett and Linda Plunkett executed an agreement stating:

> WHEREAS, the parties were married on February 20, 1990, and each of the parties have been married previously and that Pete has children by his previous marriage, and each owns substantial assets consisting of both real and/or personal property; and
>
> 1. *Testamentary Disposition of Separate Estates*. The parties each agree that in light of the fact that this was a second marriage for each of them, and that Pete has children from his previous marriage, that their separate property be devised and bequeathed to his children. Accordingly, the parties agree that they will execute the wills, copies of which are attached to this Agreement, and make no subsequent changes in testamentary disposition of their separate property to Pete's children.

(Exhibit A, Agreement of August 17, 1995.) Wills were executed along with the agreement. When Pete Plunkett died, his children received nothing under his will, which left all of his property, personal and marital, to his wife Linda Plunkett. Linda Plunkett argues that this is the result intended under the agreement, and she alleges that the agreement does not explicitly state that Pete's children receive anything upon Pete's death. She further argues that the agreement is fulfilled if, upon Linda Plunkett's death, her will leaves the children all of the separate property of Linda and Pete Plunkett. Under this interpretation, the children are entitled to nothing under the agreement until both Linda Plunkett and Pete Plunkett are deceased.

The Plaintiffs, supported by additional language in the agreement, urge a different interpretation. The agreement goes on to state:

> 2. *Testamentary Disposition of Marital Estate*. The parties agree that they will execute the wills, copies of which are attached to this Agreement, and make no subsequent changes is [sic] testamentary disposition of their marital property in contravention to their intent to leave their marital property as set forth and described in this Agreement first to the survivor and then equally to all of the [sic] Pete's children.

(Exhibit A, Agreement of August 17, 1995.) This clause addresses the marital property independent of the separate property, indicating that Pete and Linda Plunkett had some reason to address the two separately. Plaintiffs argue that the marital property is addressed independent of the separate property in the agreement because it was the intent of the agreement that the marital property go to the survivor of Pete and Linda Plunkett, but upon the death of Pete or Linda, the separate property was to go to Pete's children. The questions to be decided are: what did the parties intend when they made the agreement? If Pete Plunkett's will did not conform to the agreement, are Plaintiffs entitled to a remedy?

## Findings

### 1. *Plaintiffs Are Entitled to Enforce the Agreement*

Two testators who enter into a contract to execute mutual and reciprocal wills are bound to bequeath their estates according to the terms of the agreement. *Stephens v. Caruthers*, 97 F. Supp. 2d 698, 703 (E.D. Va. 2000), *citing Black v. Edwards*, 248 Va. 90, 91-94 (1994). If the survivor fails to execute a will conforming to the agreement, the persons who would have benefited from a conforming will may sue to protect their interests. *Stephens*, 97 F. Supp. 2d at 703-04. In this case, it is not the survivor's will that is alleged to be nonconforming, but the will of the non-surviving party to the agreement.

> Of course, while both testators are still living, they may agree to change, modify, or revoke an agreement to execute mutual and reciprocal wills. But if there is no change, modification, or revocation by the testators, *and one of them dies having performed*, the other party's final will and testament must conform to the agreement.

*Stephens*, 97 F. Supp. 2d at 704, *citing Williams v. Williams*, 96 S.E. at 751 (emphasis added). It is clear that the agreement is enforceable as to Linda Plunkett if Pete Plunkett dies having performed in accordance with the agreement. Here, however, it is not Linda Plunkett who is alleged to have breached the agreement, but Pete Plunkett himself because it is Pete's will that Plaintiffs allege to be nonconforming to the agreement.

In this case, Pete Plunkett's will is alleged to be nonconforming because of a drafting mistake, and not because of any subsequent changes made by

Pete. Accordingly, the plaintiffs are third-party beneficiaries to the agreement and can enforce their rights against the surviving party.

### 2. *Constructive Trust is the Proper Remedy*

In *Jones v. Harrison*, 250 Va. 64, 69 (1995), the Supreme Court stated that equity will impose a constructive trust upon property in the hands of the recipient of property that is given or devised to a defendant in breach of a testator's contract with a plaintiff, even if the transfer is not the result of fraud or wrongdoing on the part of the devisee. In this case, as discussed above, there is no alleged breach in a contract with the plaintiffs, but rather an alleged breach in an agreement made between the testator and the defendant. However, the agreement was made for the benefit of the plaintiffs. Plaintiffs should be afforded a remedy to protect their rights, if any, under the agreement. If Pete Plunkett's will as executed is not in conformance with the agreement, the Court is authorized to enforce the agreement in equity by declaring Pete Plunkett's separate property to be held in constructive trust for the plaintiffs.

### 3. *Plaintiffs Provide Clear and Convincing Evidence of Their Interpretation of the Agreement*

The question then becomes one of interpretation: did Pete Plunkett's will conform to the post-nuptial agreement? If it did, then there was no breach and Pete's children are not entitled to relief. If it did not, then there was a breach, and Pete's children are entitled to the relief sought.

"[W]here the person seeks to enforce a contract to execute a will that contradicts the terms of the decedent's final will, the person will prevail only upon a showing of 'clear, definite, and convincing evidence that with reasonable certainty establish[es] the making of the contract and [proof of] its terms'." *Stephens v. Caruthers*, 97 F. Supp. 2d at 704, *citing Blincoe v. Blincoe*, 209 Va. 238, 244 (1968). There are two requirements: (1) clear and convincing evidence that a contract to execute mutual and reciprocal wills existed, and (2) clear and convincing evidence that establishes proof of the terms of the contract. In *Stephens*, the alleged contract to execute mutual and reciprocal wills was an oral contract. Here, the contract is written. Thus, evidence that an agreement existed is established by clear and convincing evidence. However, the second requirement, proof of the terms of the contract, must also be established by clear and convincing evidence.

The provisions of the written agreement do not expressly state the intent of the parties. Plaintiffs argue that the different treatment of separate property

in the agreement indicates that separate property was to be treated differently from marital property in the wills. Defendant argues that the different clauses relating to separate and marital property are merely redundant and that the stated purpose of the agreement was carried out in the wills that were executed simultaneously with the agreement. In order to prevail, plaintiffs have the burden of proving their interpretation by clear and convincing evidence.

While the language of the agreement could have better expressed the intent of the parties, it is sufficiently clear and convincing to support the interpretation of the plaintiffs. First, providing for the devise of separate property in a clause independent of the devise of marital property is strong evidence that the parties intended to treat the property differently. Plaintiffs interpret this clause to mean that Pete's will would leave his separate property to his children, and Linda's will would leave her separate property to his children, regardless of which was the survivor. This is a reasonable interpretation of the language of the clause.

Second, the language used in each clause supports the intent to treat the property differently in the manner that plaintiffs allege. The clause dealing with disposition of the marital estate includes the description "[t]he parties agree . . . to leave their marital property as set forth and described in this Agreement *first to the survivor and then equally to all of the [sic] Pete's children*." (Exhibit A, Agreement of August 17, 1995 (emphasis added).) This language shows that the parties knew how to specify that the property was to go first to the survivor and then equally to the children upon the death of the survivor, if that was the intent. The clause dealing with separate property does not include any language indicating that the parties intended to leave separate property first to the survivor. This is further evidence that the parties did not intend for separate property to go to the survivor, but that each party's separate property was to be bequeathed to Pete's children by each party's will.

In addition to the language in the agreement, plaintiffs offer other proof of the intent of the agreement. On August 17, 1995, the same day that the post-nuptial agreement was made by the parties, a deed was also executed from Pete Plunkett to Pete and Linda Plunkett, husband and wife, as tenants by the entirety. (Exhibit C.) Plaintiffs argue that this deed was executed in order to turn Pete's separate property, which was supposed to go to his children under his will, into marital property, so that Linda would receive the property. Linda Plunkett argues that Pete merely wanted to be certain that she would get the property and had the deed executed in addition to the agreement and the wills. Plaintiffs also offer testimony regarding statements that Pete Plunkett made about his plan to provide for his children. (Testimony of Mary Caldwell and Art Moles.)

114

This additional evidence offered by the Plaintiffs supports their interpretation of the agreement. Pete Plunkett's statements about his estate plan, offered by the testimony of Mary Caldwell and Art Moles, are not specific proof of the terms of the agreement. Nor is the deed executed by Pete Plunkett, transferring title from his name alone to that of him and his wife, as tenants by the entirety, conclusive evidence of the Plaintiffs' interpretation. However, considered together, with the language contained in the agreement, such evidence is clear and convincing, thereby providing the necessary proof to support the creation of a constructive trust upon the separate property of the decedent.

## Conclusion

Plaintiffs are entitled to enforce the agreement entered into by Pete and Linda Plunkett. If the agreement was breached by either party, a constructive trust for the benefit of the plaintiffs is the proper remedy. Plaintiffs have shown by clear and convincing evidence that the agreement provided that Pete's children were to receive his separate property under his will. The fact that separate property and marital property is disposed of in separate clauses is strong evidence that the parties intended to dispose of them differently under their wills. While the agreement specifies that marital property is to go first to the survivor and then to the children equally, the agreement does not specify this treatment for separate property. Consequently, Pete Plunkett's separate property should be held in constructive trust for the benefit of Pete's children and should be transferred to Plaintiffs as requested.